WILLIAM J. COCHRAN ET AL. *v.* ELIJAH P. TAYLOR.

The saving in the repealing clause of the act of 1840, "for the settlement of the estates of deceased persons" (1 S. & C. Stat. 566), of rights and liabilities *accruing* under the acts thereby repealed, and the *remedies* therein provided for their enforcement, includes all inchoate rights, etc., which were *then maturing,* but not matured, and the remedies therefor. Therefore, suit may be maintained under sec. 43 of the act of 1831 (3 Chase, 1784), upon a guardian's bond executed in November, 1839, for moneys of the ward, received during that month, and not accounted for, against the heirs of a deceased obligee, to the extent of the assets by them received, after final settlement by the administrator before the proper court, although an action had accrued upon said bond prior to the settlement, and no claim had been presented therefor to such administrator, if such suit could then have been sustained against the ancestor, were he living; even though such ancestor did not die until after the act of 1840 went into operation.

ERROR to the district court of Pickaway county.

In August, 1855, Elijah P. Taylor filed a petition in the court of common pleas of Pickaway county, against Joseph Bonner, H. B. Richey, and the plaintiffs in error, setting forth that said Bonner, on November 4, 1839, was appointed guardian of said plaintiff, then only five years old, executed a guardian's bond, in due form, with H. B. Richey and the

ancestor of plaintiffs in error as his sureties, and thereupon assumed the duties of said appointment, and received, during the same month $102, money belonging to his said ward, but had never rendered any account therefor to said common pleas, nor its successor, the probate court, and had never paid said money, nor the interest thereon, into either of said courts, nor to the plaintiff, although it was duly demanded by the plaintiff on attaining full age, January 23, 1855. That no other guardian was ever appointed for said plaintiff. That Bonner is insolvent, and Richey believed to be so, and that Charles Cochran, the other surety, was dead, leaving the plaintiffs in error his heirs at law, who had each received from his father's estate a sum sufficient to pay plaintiff's claim, and asks judgment for $102, and interest from November, 1839.

Richey was not served, and Bonner made default.

Plaintiffs in error answered: That plaintiff below became ⸴f age to choose a guardian January 23, 1848, at which time ʋonner's authority to act as guardian ceased. That their ᴀᴧɐestor died in 1845, and Matthew Bonner was appointed adᴀᴧinistrator of his estate June 23, 1845, was qualified as sucʜ, and gave due notice to all creditors to present their claiᴋᴧ for allowance, and made a final settlement of the estate iu July, 1849, more than one year after plaintiff became of age ᴢo choose a guardian, and after an action had accrued on saiʟ bond. That plaintiff's claim was one which might have bᴇᴧon presented to said testator, but was not so presented.

The pʟᴧintiff below demurred to said answer, and the common pleaʜ ᴊustained the demurrer, and rendered judgment in his favoɤ for $199.92.

Plaintiffs in error appealed to the district court, which court, also, upon the hearing, sustained the demurrer, and rendered juʟgment for plaintiff below for $211.14.

The presᴇnt petition in error is prosecuted to reverse these judgments of the district court and court of common pleas.

The error relied on is the sustaining of the demurrer to the answer of the defendants below.

*Jonathan Rennick* and *H. F. Page,* for plaintiffs in error.

*P. C. Smith,* for defendants in error.

PECK, J.—The action below was by defendant in error, shortly after attaining his majority, against the plaintiff in error, upon a guardian's bond, executed by their ancestor as surety for Joseph Bonner, November 4, 1839, to recover money belonging to plaintiff, and received by said Bonner, as his guardian, during that month. The petition is founded upon section 43, of the " act defining the duties of executors and administrators," passed March 12, 1831 (3 Chase, 1784), which provides, that after final settlement of the estate of a deceased person, by an executor or administrator, before the proper court, the heirs and devisees of such deceased person, " shall remain liable to the full extent of the assets by them received from the estate of their ancestor or devisor, for the payments of all claims against the estate of such ancestor or devisor, and that *any suit* which could be brought and sustained against such ancestor or devisor *were he alive,* may be brought and sustained against such heirs and devisees, after the executor or administrator of the ancestor or devisor shall have made final settlement with the court, until the assets so received by such heirs or devisees, shall be exhausted."

This statute was in force when the bond in suit was executed, and the petition contains all the averments necessary to a recovery under it.

The answer demurred to, is based upon the provisions of the " act for the settlement of the estates of deceased persons " (1 S. & C. St. 566), which took effect November 1, 1840, and claims exemption from liability upon said bond, because the estate of their ancestor, who died in 1845, was finally settled by its administrator before the proper court, in July, 1849, more than four years after the date of the administration bond and notice under the statute to creditors to present

their claims for allowance ; averring that the plaintiff's claim was not presented to the said. administrator before his final settlement, although the plaintiff became of age to choose a guardian in January, 1848, and of full age January, 1855, and that an action had accrued to him thereon, more than one year before the time of such final settlement.

If the averments of the answer are true, and the liability of the plaintiffs in error upon the bond, is to be determined by the act last referred to, under which the estate of their ancestor was settled, the answer would seem to present a defense, and should have been sustained.    The facts stated in the answer, under the act of 1840, form a bar to suits against heirs, and it contains no *saving* of the rights of persons laboring under disabilities.    *Hall* v. *Bumstead*, 20 Pick. 8.    The statute of 1831, was repealed by the act of 1840, but the defendant in error insists, that his right to maintain his suit against the plaintiffs in error, even after a final settlement by the administrator of their ancestor, is expressly saved to him by the proviso annexed to the repealing clause of the law of 1840.    Section 240, after enacting that said act of 1831, and sundry statutes amendatory thereof, should be and were thereby repealed, contains the following proviso :

" Provided, however, the repeal of said acts shall not affect any act done, or any *right, liability* or estate, *accruing* or accrued, or any suit, matter or proceeding, had or commenced ; *but the same shall be determined, and remedies for the same had,* and all estates in the course of settlement by an executor or administrator, at the time this act takes effect, shall be settled under said acts."

The phraseology of this proviso is somewhat involved, by an attempt of the draftsman to provide for various subjects, under one and the same introduction and conclusion ; and thereby to avoid repetition ; still, we think, there is no real ambiguity in the proviso, as above copied from the revised statutes. · Separating that portion of the proviso which embraces rights and liabilities, *inchoate* as well as complete, from the other subjects, and annexing those portions which

are common to it and one or more of the other divisions, the proviso will read thus:

"Provided, however, the repeal of said acts shall not effect any right (or) liability *accruing* or accrued, but the same shall be determined *and remedies for the same had under said acts.*"

It is manifest, from the punctuation and the context, that the provision as to the remedies "to be had," applies to "accruing rights," etc., as well as to "suits and proceedings had and commenced;" and it is equally plain, that the last three words of the proviso, apply to *all* the matters and things thereby saved from the operation of the act. The object was not merely to preserve the *inchoate rights*, created and protected by the acts repealed, but at the same time, to continue in force the provisions of the repealed statutes *for their enforcement.* There is nothing in the phraseology used, which prevents us from carrying out this plain and obvious intent, and the mere insertion of a comma between the words "settled" and "under," renders this legislative intent still more palpable.

The language of the proviso is broad and comprehensive. It saves not only *rights*, with their *remedies*, which had then "accrued," and on which an action could be maintained at that time; but also rights then "*accruing*," which might *thereafter ripen* into an existing cause of action.

The reason for this peculiar phraseology becomes apparent, when we consider the difference in the statutes. The act of 1831, while it barred actions against administrators after final settlement with the court, upon claims which had not been presented to them for allowance, permitted the creditors *thereafter* to subject the heirs to its payment, to the extent of the assets by them received, by *any suit* which the creditor could have maintained against the ancestor *were he alive.* The settlement created a bar in favor of the administrator; while the heir had to rely upon the *general* statute of limitations for his protection.

The act of 1840, however, barred a suit *against the heir* as well as the administrator, after final settlement, upon claims

previously due, and it was manifestly proper for the legislature to prevent that statute from having any *retroactive* effect, by excluding from its operation, rights *maturing* as well as matured. A contract may be fairly presumed to have been made in reference to existing laws providing remedies for its enforcement, and while the legislature may doubtless pass laws limiting or otherwise affecting such remedy, where there is not, as in the State of New Jersey, a constitutional inhibition of such legislation ; still, it is obvious, that every such enactment is, in a certain sense, *retroactive* and *unjust.* It impairs remedies, which the parties had in view, and upon which they relied when the agreement was entered into; and a statute should never receive such a construction, if it is fairly susceptible of another and more equitable interpretation.

The bond in suit was executed in 1839, while the act of 1831 was in force and nearly one year before the statute of 1840 went into operation. Upon the execution of the bond and the reception of the money, the ward acquired a right to demand its faithful performance, and to sue the guardian and his sureties if default should be made in its provisions ; and the guardian and his sureties assumed the duties it imposed; and became liable to a suit upon failure to fulfill it. This *right* and *this liability* may be said to have been *accruing* from the time the bond was executed and the money received; precisely, as the right and liability arising upon a promissory note, is accruing from its execution and delivery until its maturity. Before due, it is a *right accruing;* when due, it becomes a *right accrued.*

It is also said, that the ancestor of plaintiffs in error was living when the act of 1840 went into operation, and that under the maxim, *nemo est hæres viventis,* there were not any *heirs then existing,* to whom such liability attached, and upon whom the saving could operate. It is true, that no right had then accrued against the plaintiffs in error, but the instrument, which is in the usual form, *expressly binds the obligors and their heirs* for its fulfillment, and the statute of 1831, acting upon this bond, had authorized suit thereon against the heirs

after descent cast, if the ancestor could have been sued were he living. This right of eventual recourse upon the heirs of the obligors, was one of the remedies given by that act to the obligee, and by virtue of the proviso in the statute of 1840, still *adheres* to the bond. It was a right then *accruing* but not accrued, and material to an enforcement of the liabilities created by the bond.

The proviso not only saves the *accruing* right, but expressly declares that the right thus saved, " shall be *determined and remedies for the same had under said acts.*" Were we to hold that the right thus saved, could only be asserted thereafter under *other* laws, we should ignore the rule which requires us in construing statutes, to give some effect to every part of the law, if practicable. 7 Cush. 88, 89 ; 2 Michigan 138.

The ancestor of the plaintiffs in error, had he been living when the suit below was instituted, would, upon the other facts set forth in the petition, have been liable to the suit of the plaintiff below; and upon our construction of the effect of the proviso in the law of 1840, the plaintiffs in error are also liable to such action, notwithstanding the facts stated in their answer. The demurrer to that answer was, therefore, rightfully sustained.

Judgment affirmed.

SUTLIFF, C. J., and GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.